UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| FREDRICK J. GREEN, | ) | Civil Action No.: 0:15-cv-3245-MGL-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| RENT-A-CENTER EAST, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## I. INTRODUCTION

In this action, Plaintiff alleges violations of the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601, et seq., as well as various state law claims, arising out of his employment with Defendant Rent-a-Center East, Inc. Presently before the court are Defendant's Motion to Dismiss or Stay the Case and Compel Arbitration (Document # 4) and Plaintiff's Motion for Declaratory Judgment (Document # 7). All pretrial proceedings were referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2)(g). The report and recommendation is prepared for review by the district judge.

## II. FACTUAL ALLEGATIONS

Plaintiff began working for Defendant in June of 2012. On April 10, 2014, Plaintiff was delivering a washing machine to a customer's home after the customer purchased it from Defendant. While carrying the washing machine into the customer's home, Plaintiff fell through a hole in the customer's floor with the washing machine falling on top of him, causing him severe injuries. Due to those injuries, he was out of work beginning April 11, 2014. On April 16, 2014, Plaintiff filed a worker's compensation claim for his injuries. On January 23, 2015, Plaintiff's physician determined that he had reached maximum medical improvement (MMI) and cleared him to return

to work on January 26, 2015. Plaintiff informed his store manager that his physician cleared him to return to work. However, the store manager advised Plaintiff that the district manager said he could not return to work until Plaintiff was medically one hundred percent. Plaintiff's district manager also informed the store manager that Plaintiff could not return to work until the local office cleared him. On February 5, 2015, the store manager informed Plaintiff that she discovered an email stating that Plaintiff was terminated. Pl. Comp. ¶¶ 7-16.

### III.   ARBITRATION AGREEMENT

On or about June 7, 2012, at the inception of his employment[1], Plaintiff executed a Mutual Agreement to Arbitrate Claims (the Arbitration Agreement). Ex. 1 to Tuckey Decl. Under the "Claims Covered By The Agreement" section, all disputes between the parties must be arbitrated:

> The Company and I mutually consent to the resolution by arbitration of all claims or controversies ("claims"), past, present or future, including without limitation, claims arising out of my application for employment, assignment/employment, and/or the termination of my assignment/employment that the Company may have against me or that I may have against any of the following: (1) the Company, … (3) the Company's parent, subsidiary, and affiliated entities.
>
> * * *
>
> … The claims covered by this Agreement include, but are not limited to: … claims for breach of any contract or covenant (express or implied); tort or statutory claims for discrimination (including, but not limited to … workers' compensation, . . . medical condition, handicap or disability); … and claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance....

Arbitration Agreement p. 1.

Under "Arbitration Procedures," the Arbitration Agreement provides

> The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability,

---

[1] Plaintiff asserts in his Response that he signed numerous documents on his second day of employment. Although he does not remember signing the Arbitration Agreement, he did recognize his signature on the document. Pl. Resp. 2.

> enforceability, or formation of this Agreement, including, but not limited to any claim that all or part of this Agreement is void or voidable.

Arbitration Agreement p. 3.

## IV.  DISCUSSION

The Arbitration Agreement provides that the Federal Arbitration Act (FAA), 9 U.S.C. § 3, et seq. is applicable here. The FAA "creates a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985). While Congress considered the advantage of expeditious resolution of disputes through arbitration in enacting the FAA, its primary purpose was to enforce agreements into which parties have entered. Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University, 489 U.S. 468,478 (1989).

"[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Gilmer, 500 U.S. at 26. The "liberal federal policy favoring arbitration agreements manifested by this provision and the Act as a whole, is at bottom a policy guaranteeing the enforcement of private contractual arrangements; the Act simply 'creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate.'" Mitsubishi, 473 U.S. at 625 (citing Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1 (1983).

In deciding whether to compel arbitration, the trial court is tasked with determining two gateway issues. Howsam v. Dean Witter Reynolds, 537 U.S. 79, 83-84 (2002). Courts should "engage in a limited review to ensure that the dispute is arbitrable – i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." Hooters of America, Inc. v. Phillips, 173 F.3d 933,938 (4th Cir. 1999). Our inquiry

is not limited to defects in contractual formation such as lack of mutual assent and want of consideration, but also includes "such grounds as exist at law or equity for the revocation of contracts." Id.; 9 U.S.C. § 2; Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., at al., 473 U.S. 614, 627 (1985)("courts should remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds 'for the revocation of any contract.'").

      Plaintiff does not dispute that the claims raised in his Complaint fall within the scope of the Agreement. However, he argues that the Arbitration Agreement is invalid and unenforceable and seeks a declaration as such in his motion for declaratory judgment. Defendant points to Rent-A-Center West, Inc. v. Jackson, 56 U.S. 63, 72, 130 S. Ct. 2772, 2779 (U.S. 2010), in which the Supreme Court held that where an agreement to arbitrate includes an agreement that the arbitrator will determine the enforceability of the agreement, any challenge to the enforceability of the agreement as a whole should be resolved by the arbitrator. In Jackson, the plaintiff brought an employment discrimination lawsuit against the defendant, his former employer. Id. at 65. The defendant filed a motion to dismiss and to compel arbitration based on the arbitration agreement between the parties. Id. In addition to providing that disputes between the parties would be resolved by arbitration, the arbitration agreement also contained a "delegation" clause that provided the arbitrator would have authority to resolve disputes about the enforceability of the arbitration agreement. Id. In opposing the defendant's motion to compel arbitration, the plaintiff challenged the validity of the agreement as a whole, arguing that it was unconscionable because of the agreement to split arbitration fees and because the discovery procedures were too limited. Id. at 66, 73. The plaintiff did not attack the delegation clause specifically. Id. at 73. Therefore, the U.S. Supreme Court ruled that the plaintiff's challenges to the enforceability of the arbitration agreement should

be heard by the arbitrator, not the court. Id. at 72-73.

Plaintiff argues that Jackson is distinguishable because in the present case, he has specifically challenged the delegation clause in the Arbitration Agreement. The Jackson court noted that an agreement to arbitrate a gateway issue, or, in other words, a delegation clause, is "simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." Jackson, 561 U.S. at 69. The delegation agreement is valid under § 2 "save upon such grounds as exist at law or in equity for the revocation of any contract." Id. (citing 9 U.S.C. § 2). The Jackson court never reached the validity question because it found that the plaintiff did not attack the delegation clause specifically.

Here, Plaintiff argues that the delegation agreement was unconscionable because he did not have any meaningful choice in his decision to sign the Arbitration Agreement "as his continued employment was conditioned upon him signing the Agreement." Pl. Resp. p. 8. Under South Carolina law, unconscionability is defined as "the absence of meaningful choice on the part of one party due to one-sided contract provisions, together with terms that are so oppressive that no reasonable person would make them and no fair and honest person would accept them." Carolina Care Plan, Inc. v. United Health Care Servs., Inc., 606 S.E.2d 752, 757 (S.C. 2004). Plaintiff essentially argues that the delegation clause is an adhesion contract. Adhesion contracts are standard form contracts offered on a take-it-or-leave-it basis with terms that are not negotiable. Simpson, 373 S.C. at 26-27, 644 S.E.2d at 669 (citing Munoz v. Green Tree Fin. Corp., 343 S.C. 531, 541, 542 S.E.2d 360, 365 (2001)). Adhesion contracts are not per se unconscionable. Lackey v. Green Tree Fin. Corp., 330 S.C. 388, 395, 498 S.E.2d 898, 902 (Ct.App.1998). As the South Carolina Supreme Court has noted, the standardization of contracts is "'a rational and economically efficient response

to the rapidity of market transactions and the high costs of negotiations.'" Id. (quoting Goodwin v. Ford Motor Credit Co., 970 F.Supp. 1007, 1015 (M.D.Ala.1997)).

Plaintiff argues that he had no choice but to sign the Arbitration Agreement, the delegation clause was inconspicuously placed in the middle of the five-page document, and he lacked the judgment necessary to make him aware of the implications of what he was signing. Assuming arguendo, Plaintiff's assertions are true, the "mere fact that one party to the contract is larger than the other" cannot be the basis of a finding of unconscionability of an arbitration clause in a contract. Stedor Enters., Ltd. v. Armtex, Inc., 947 F.2d 727, 733 (4th Cir. 1991). Likewise, "[i]nequality of bargaining power alone will not invalidate an arbitration agreement." Munoz, 343 S.C. at 541 n.5, 542 S.E.2d at 365 n.5 (citing Gilmer, 500 U.S. at 20). Furthermore, a party to a contract has a duty to read the contract and learn its contents before signing it. Burwell v. South Carolina Nat. Bank, 288 S.C. 34, 39, 340 S.E.2d 786, 789 (1986) (citing J.B. Colt Co. v. Britt, 129 S.C. 226, 123 S.E. 845 (1924)). This court must determine whether the delegation clause "is geared towards achieving an unbiased decision by a neutral decision-maker." Simpson v. MSA of Myrtle Beach, Inc., 373 S.C. 14, 25, 644 S.E.2d 663, 669 (2007). Plaintiff has failed to show as much and, thus, fails to show that the delegation clause is invalid.

In addition to addressing the validity of a delegation agreement, if it is challenged, courts must also find that the parties intended for the arbitrator to decide the issue of enforceability. AT&T Technologies v. Communications Workers, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). The parties' manifestation of this intent must be clear and unmistakable. AT&T, 475 U.S. at 649; Jackson, 561 U.S. at 69, n. 1("'[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator'"). This "clear and unmistakable" requirement refers to the parties' manifestation of

intent, not the agreement's validity. Jackson, 561 U.S. at 69, n. 1. The "clear and unmistakable" standard is a high bar; the Fourth Circuit has held that an arbitration clause does not satisfy the "clear and unmistakable" standard simply by "committ[ing] all interpretive disputes 'relating to' or 'arising out of the agreement" to arbitration. Carson v. Giant Food, Inc., 175 F.3d 325, 330 (4th Cir.1999). However, the delegation clause in the Arbitration Agreement at issue here is much more specific. Within the third paragraph of the "Arbitration Procedures" section, the agreement states

> The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement, including, but not limited to any claim that all or part of this Agreement is void or voidable.

Arbitration Agreement p. 3. It specifically provides that the aribitrator, and not any court, shall have exclusive authority to resolve, not just interpretive disputes, but also applicability, enforceability, and formation of the Arbitration Agreement as well as claims that the Arbitration Agreement is void or voidable.

In addition, a majority of circuit courts address have held that the "clear and unmistakable" standard is met when, in addition to the expansive language of delegation, an arbitration clause incorporates a specific set of rules that authorize arbitrators to determine arbitrability. See U.S. ex rel. Beauchamp v. Academi Training Center, Inc., No. 1:11-cv-371, 2013 WL 1332028, *5 n.17 (E.D.Va. March 29, 2013) (collecting cases).[2] On page three of the Arbitration Agreement, under the section entitled "Arbitration Procedures," the first sentence of the first paragraph provides that

---

[2]In PTA-FLA, Inc. v. Huawei Technologies USA, Inc., No. 3:14-cv-1312-TLW, 2014 WL 3100458 (D.S.C. July 2, 2014), Chief Judge Wooten held that the delegation clause at issue was not clear and unmistakable, despite language that all disputes relating to the "existence or validity" of the contract are to be submitted to the arbitrator and incorporation of AAA rules. Id. at *5. However, the issue in that case was whether the defendant was a party to the contract, Id. at *4, not whether the contract itself was valid, and, thus, it is distinguishable from the present case. The Fourth Circuit has not addressed this issue. See Beauchamp, 2013 WL 1332028, *5.

"[t]he arbitration will be held under the auspices of the American Arbitration Association (AAA), and except as provided in this agreement, shall be in accordance with the then current National Employment Arbitration Rules or equivalent of the AAA." Arbitration Agreement p. 3. Rule 6(a) of the AAA's Employment Arbitration Rules and Mediation Procedures"[3]  provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."

Thus, both the rules incorporated into the Arbitration Agreement as well as Arbitration Agreement itself clearly and unmistakably  delegates to the arbitrator the question of the validity of the Arbitration Agreement.[4]  Accordingly, compelling arbitration of the claims raised by Plaintiff in this action is proper.

Because all of the claims raised by Plaintiff are arbitrable, Defendant moves for dismissal, rather than a stay, of this case.  In   Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F. 3d 707, 709-10 (4th Cir. 2001), the Fourth Circuit held that dismissal is proper where all of the parties' claims are covered by the arbitration agreement.  Thus, pursuant to Choice Hotels, dismissal of this action is appropriate.

## V.     CONCLUSION

For the reasons discussed above, it is recommended that Defendant's Motion to Dismiss or Stay the Case and Compel Arbitration (Document # 4) be granted, Plaintiff's Motion for Declaratory

---

[3] These are the AAA's arbitration rules applicable in employment cases, and thus, the equivalent to the National Employment Arbitration Rules cited in the Arbitration Agreement.

[4] Although Plaintiff argues that the delegation provision within the Arbitration Agreement is unconscionable, he points to no reason why that provision itself is unconscionable apart from the Arbitration Agreement as a whole.  As such, the issue of unconscionability of the Arbitration Agreement, which speaks to the validity of the agreement, is a matter for the arbitrator to decide. See, e.g., Jackson, 561 U.S. at 73.

-9-

Judgment (Document # 7) be denied, and this case be dismissed in its entirety.

                                                  s/Thomas E. Rogers, III
                                                Thomas E. Rogers, III
                                                United States Magistrate Judge

November 24, 2015
Florence, South Carolina